IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA

v.

HENRY JONES
*Defendant*.

Criminal Action No.  ELH-22-0371

**MEMORANDUM OPINION**

A grand jury in the District of Maryland indicted defendant Henry Jones on the charge of possession of ammunition by a prohibited person, in violation of 18 U.S.C. § 922(g).  ECF 1.  The charge stems from the search of a satchel that officers of the Baltimore Police Department ("BPD") removed from defendant's body on May 24, 2022, as he sat handcuffed on the front porch of an attached home in Baltimore City.  The home belongs to a relative of defendant's friend.  At that time, defendant was socializing with his friend.

Pursuant to Rule 12(b)(3) of the Federal Rules of Criminal Procedure ("Fed R. Crim. P."), Jones has filed a "Motion to Suppress Evidence" (ECF 33), as well as a "Motion to Suppress Statements" (ECF 34), claiming violations of his Fourth, Fifth, and Sixth Amendment rights.  In particular, defendant challenges the warrantless entry onto the front porch of the residence, the warrantless seizure of defendant and his satchel while he sat on the front porch, and the warrantless search of defendant's satchel while he was restrained and no longer had access to it.  ECF 33 at 1.  Additionally, defendant seeks to suppress his post-arrest statements, claiming that they were obtained in violation of his privilege against self-incrimination, the Supreme Court's holding in *Miranda v. Arizona*, 384 U.S. 436 (1966), were "otherwise involuntary," and constitute the proverbial fruit of the poisonous tree.  ECF 34 at 1-2.

An evidentiary motions hearing is scheduled for June 26, 2023, and June 27, 2023.  ECF 45.  In anticipation of the hearing, defendant submitted a "Motion *in Limine* to Cross-Examine Law Enforcement Witness About Prior Misconduct at Evidentiary Hearing."  ECF 43 (the "Motion").  The law enforcement witness is BPD Officer Alex Rodriguez-Ramos ("Rodriguez").[1] The Motion is supported by seven exhibits, all of which consist of sustained findings by the Public Integrity Bureau ("PIB").  ECF 43-1 to ECF 43-7.[2]  The government opposes the Motion (ECF 53), supported by a memorandum.  ECF 53-2 (collectively, the "Opposition").  And, it also submitted the same PIB records as an exhibit.  ECF 53-4.  Defendant replied.  ECF 58 (the "Reply").

For the reasons that follow, I shall grant the Motion in part and deny it in part.

### I. Factual Background

At approximately 4:00 p.m. on May 24, 2022, Special Agent ("SA") Ryan Welsh of the Drug Enforcement Administration[3] was monitoring the 1200-1300 block of Poplar Grove Street in Baltimore City, using the closed-circuit television system ("CCTV").  *See* ECF 33-1 (Statement of Probable Cause).  At about 4:03 p.m., SA Welsh saw a man, later identified as the defendant, standing on the porch of 1221 Poplar Grove Street (the "Residence").  *Id*. at 1.[4]  Defendant was

---

[1] In its Motion, the defendant refers to Rodriguez as an officer.  *See* ECF 43.  However, in his motion to suppress evidence, defendant refers to Rodriguez as a detective.  *See* ECF 33.   The government refers to Rodriguez as an officer.  *See* ECF 53-2; *see also* ECF 38.

[2] The government generally refers to these records as "IAD" matters.  IAD is an abbreviation for Internal Affairs Division.  *See* ECF 53-2 at 6.  The parties do not explain the connection between IAD and PIB.  To the Court's knowledge, the PIB includes the IAD.  See *Baltimore police department makes small steps in policing itself*, WASH. POST (June 21, 2021), https://perma.cc/583Y-V6BE.

[3] The defense indicates that Welsh is a BPD "Investigator."  ECF 33 at 1.

[4] In its opposition to the suppression motion, the government asserts that SA Welsh knew defendant "prior to this surveillance."  ECF 38 at 3.

wearing a black satchel, which was attached to his body by a strap that he wore across his chest and over his shoulder.  *Id.*

According to the Statement of Probable Cause, SA Welsh observed "the outline of a L shape object" on defendant's front sweatshirt pocket.  *Id.*  SA Welsh claimed he suspected the object to be a handgun.  *Id.*  Further, he alleges that defendant twice conducted a "security check," at about 4:08 p.m. and 4:12 p.m., by purportedly using his hand to touch the object inside his sweatshirt pocket.  *Id.*

Defendant crossed the street and entered Winchester Famous Deli, located at 1300 Poplar Grove.  ECF 33-1 at 1.  When defendant exited the store to return to the Residence at about 4:15 p.m., SA Welsh could no longer see the outline of an object inside defendant's sweatshirt pocket. *Id.*  SA Welsh believed that defendant may have transferred the handgun from his sweatshirt to his black satchel.  *Id.*  SA Welsh subsequently contacted Sergeant Flynn of the BPD Group Violence Unit and informed him of what he had observed on CCTV.  *Id.*

BPD officers arrived at the Residence at 4:41 p.m.  *Id.*  Officer Ramsey approached the front porch with his gun drawn and ordered Jones to put his hands in the air.  ECF 38 at 5. Defendant complied and Ramsey handcuffed him.  *Id.*  Meanwhile, Officer Rodriguez walked onto the front porch as Jones was being placed in handcuffs.  He removed the cross-body satchel from defendant.  *Id.*

The Statement of Probable Cause indicates that Officer Rodriguez "conducted a weapon pat-down of the black satchel" at 4:43 p.m. – two minutes after officers restrained defendant and took the satchel off his body.  *Id.*  During the weapon pat-down, Officer Rodriguez felt what he believed to be the handle of a handgun.  *Id.* at 1-2.

The parties disagree about where and when Officer Rodriguez proceeded to open and search the satchel.  For instance, in the government's opposition to the suppression motion, it stated: "While [Officer Rodriguez was] standing a few steps away from Jones, [he] began his search of the cross-body satchel and discovered a firearm."  ECF 38 at 5-6.  Conversely, "[t]he Defense maintains the search happened later, when Officer Rodriguez-Ramos walked even farther away from Mr. Jones, to the back of a patrol car that was parked in the street."  ECF 43 at 1.

Because Officer Rodriguez's testimony, and the veracity of it, will be relevant to the Court's decision regarding defendant's motions to suppress, Jones has asked the Court to allow cross-examination at the evidentiary hearing about six findings of misconduct by Officer Rodriguez, made by the PIB.  ECF 43 at 1-3.  Defendant contends: "A review of the facts of each incident reveals that the subject of the complaint is clearly probative of [Officer Rodriguez's] character for truthfulness or untruthfulness."  *Id*. at 5; *see* F.R.E. 608(b).  Additionally, defendant states that he "has a constitutional right to cross-examine Officer Rodriguez-Ramos to explore his potential bias, motivation, or prejudice."  ECF 43 at 6 (citing *United States v. Ferris*, 704 F. App'x 225, 235 (4th Cir. 2017)).

Additional facts are discussed, *infra*.

## II. Standard of Review

"'A district court is accorded a wide discretion in determining the admissibility of evidence under the Federal Rules.'"  *Sprint/United Management Co. v. Mendelsohn*, 552 U.S. 379, 384 (2008) (quoting *United States v. Abel*, 469 U.S. 45, 54 (1984)).  Under Rule 402 of the Federal Rules of Evidence ("F.R.E."), "[r]elevant evidence is admissible" unless rendered inadmissible pursuant to some other legal provision, but "[i]rrelevant evidence is not admissible."  And, "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would

be without the evidence; and (b) the fact is of consequence in determining the action." F.R.E. Rule 401.

Relevant evidence is not always admissible, however. Under F.R.E. Rule 403, even if the evidence is relevant, the court "may exclude [it] if its probative value is substantially outweighed by a danger of . . . unfair prejudice," confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." *See also United States v. Gondres-Medrano*, 3 F.4th 708, 719 (4th Cir. 2021).

"'[W]here evidence is probative, "the balance under Rule 403 should be struck in favor of admissibility, and evidence should be excluded only sparingly."'" *United States v. Miller*, 61 F.4th 426, 429 (4th Cir. 2023) (citations omitted); *see also United States v. Udeozor*, 515 F.3d 260, 264-65 (4th Cir. 2008); *United States v. Lentz*, 524 F.3d 501, 525 (4th Cir. 2008). In *Miller*, 61 F.4th 426, a criminal case, the Fourth Circuit characterized Rule 403 as setting a "high bar" for exclusion. *Id.* at 429. To exclude evidence, "it must be unfairly prejudicial." *Id.* And, the court "'will find undue prejudice only if there is a genuine risk that the emotions of a jury will be excited to irrational behavior, and this risk is disproportionate to the probative value of the offered evidence.'" *Gioioso v. Thoroughgood's Transport, LLC*, ADC-16-3841, 2018 WL 5281903 at *3 (D. Md. Oct. 24, 2018) (quoting *Adams v. NVR Homes, Inc*., 141 F. Supp. 554, 558 (D. Md. 2001)); *see also United States v. Powers*, 59 F.3d 1460, 1468 (4th Cir. 1995).

The Federal Rules of Evidence generally prohibit the admission of character or proclivity evidence, except for certain specific purposes. In particular, Rule 404 states, in part:

**(a) Character Evidence**.

> **(1) *Prohibited Uses***. Evidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait.

***

**(b) Other Crimes, Wrongs, or Acts**.

> **(1)** *Prohibited Uses*. Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.
>
> **(2)** *Permitted Uses*. This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

Of import here, F.R.E. 608(b) addresses cross-examination of witnesses through the use of prior conduct.  It provides:

> **(b) Specific Instances of Conduct**. Except for a criminal conviction under Rule 609, extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness. But the court may, on cross-examination, allow them to be inquired into if they are probative of the character for truthfulness or untruthfulness of:
>
> > (1) the witness; or
> >
> > (2) another witness whose character the witness being cross-examined has testified about.
>
> By testifying on another matter, a witness does not waive any privilege against self-incrimination for testimony that relates only to the witness's character for truthfulness.

The Fourth Circuit has said that certain conduct may properly be the subject of cross-examination if relevant to the witness's truthfulness, even if it is not a conviction.  *United States v. Leake*, 642 F.2d 715, 717-18 (4th Cir. 1981).  Examples of such conduct include "perjury, fraud, swindling, forgery, bribery, and embezzlement."  *Id.* at 718.

### III. Discussion

As noted, the defendant seeks to cross-examine Officer Rodriguez about six findings of misconduct made by the PIB.[5]  The defendant asserts that cross-examination as to the incidents is permissible under F.R.E. 608(b).  ECF 43 at 5.  Moreover, the defendant argues that the cross-examination is probative of bias and prejudice.  *Id.* at 6.  According to defendant, the incidents "reveal" that Rodriguez is "often motivated by the desire to generate statistical volume in the form of arrests and the seizure of contraband . . . ."  *Id.* at 7.

I discuss each incident, in turn.

### A. August 2, 2019, Improper Strip Search (PIB Number 2019-1395)

On August 2, 2019, Rodriguez and four other BPD officers participated in a strip search of a detainee, which was found to be in violation of BPD policy.  ECF 43-1 ("Investigative Report for PIB Number 2019-1395").  The suspect was transported to the police station and strip searched. While at the police station, Sergeant Kenneth Ramberg, the arresting officer, told the suspect to remove the drugs he had already concealed on his person.  When the suspect refused, multiple officers, including Rodriguez and Sergeant Ramberg, grabbed the suspect "by his arms and legs and forced him on the ground, face down."  *Id*. at 13.  The suspect's "pants were then pulled down, underneath his buttocks, as Sergeant Ramberg went under [the suspect's] clothing in an attempt to retrieve suspected CDS [controlled dangerous substances]."  *Id*.  According to the "Investigative Finding" section of the summary, "Sergeant Ramberg utilized a knife, provided by Officer Rodriguez, to cut and remove suspected CDS from [the suspect's] undergarments."  Moreover Sergeant Ramberg did not request permission from a permanent rank supervisor, lieutenant or above, prior to initiating the search of [the suspect]."  *Id*

---

[5] Four of the incidents occurred when Rodriguez was an officer.  *See* ECF 43-1; ECF 43-3-5.  Two of the incidents occurred when Rodriguez was a detective.  *See* ECF 43-6; ECF 43-7.

After a review of the evidence, the allegations of "Excessive Force," "Conduct Unbecoming a Police Officer," and "Improper Strip Search" against Officer Rodriguez and four other officers were "Sustained." *Id.* (emphasis and underlining omitted).

Courts have recognized that not every instance of past misconduct falls within the ambit of F.R.E. 608(b), because not all past misconduct relates to trustworthiness. *See, e.g., United States v. Alston*, 626 F.3d 397, 404 (8th Cir. 2010) (affirming the district court's exclusion of past conduct that an officer "engaged only in ridiculing or taunting a prisoner" due, in part, to the danger of prejudice from introducing "sanctions completely unrelated to the witness'[s] character for truthfulness"); *United States v. Seymour*, 472 F.3d 969, 970 (7th Cir. 2007) (stating that an officer's use of excessive force "was not probative of his truthfulness").

Additionally, other courts have excluded evidence in cases like this under Rules 403 and 404. *See, e.g., United States v. Hamell*, 3 F.3d 1187, 1189 (8th Cir. 1993) (excluding evidence where information was "unrelated to the events involved in the defendant's trial," and would merely confuse the issues and needlessly prolong the trial"); *Shields v. United States*, 2017 WL 1196830, at *8-9 (N.D. Ill. Mar. 31, 2017), *vacated on other grounds*, 139 S. Ct. 1257 (2019) (finding civil lawsuit alleging excessive force and other misconduct against officer witnesses inadmissible because evidence would have resulted in "distracting and time consuming mini-trial . . . regarding the merits of these other allegations . . . .  Given the lack of similarity in the underlying events, the distance in time between them, the lack of detail regarding the precise actions taken by [the officer]in the [civil lawsuit],and the inflammatory nature of the allegations in [the civil lawsuit], the Court would not have permitted Gambino to inquire into this lawsuit even if she had sought to do so."); *United States v. Rodriguez*, 2015 WL 1279472, at *6 (E.D. Pa. Mar. 19, 2015) (finding police misconduct evidence would be inadmissible in new trial under F.R.E.

404(b), because, due to the lack of police misconduct in the instant case, defense merely sought to use the evidence to show a "propensity link" between past bad conduct and instant case).

In my view, these sustained allegations are not relevant at this juncture. *See* F.R.E. 401-403. In particular, the sustained findings do not suggest anything about Officer Rodriguez's character for truthfulness. *See* F.R.E. 608(b). Indeed, the investigative summary did not make any findings in regard to his truthfulness, nor was there any mention of dishonesty on his part.

Accordingly, because this incident does not implicate Officer Rodriguez's truthfulness, Rule 608(b) precludes its use during cross-examination. *See United States v. Newby*, 403 Fed. Appx. 809, 811 (4th Cir. 2010).

### B. January 21, 2020, Transport of Arrestee (PIB Number 2020-0098)

This matter involved multiple charges against Officer Rodriguez and one other BPD officer. I shall focus on Rodriguez.

On January 21, 2020, then Rodriguez arrested a suspect on an outstanding warrant. ECF 43-3 ("Investigative Report for PIB Number 2020-0098"). According to the "Investigative Finding," Rodriguez handcuffed the suspect "in the front of his body and allowed him the option of not wearing a seat belt." *Id*. at 5. The PIB Report continues: "When they arrived at Central Booking Intake Facility, Officer Rodriguez-Ramos asked [the suspect] to place his seatbelt on upon seeing the inspection's unit [sic] and instructed him to falsely claim an injuring [sic] by telling him to say his arm was hurting." *Id*. The report concluded that "the instructions that were given to [the suspect] to put on his seatbelt on [sic] and say his arm was hurting, made a misrepresentation to the inspection's unit detective that [the suspect] wore a seatbelt during the transportation when he did not, and to justify [the suspect] having been handcuffed in the front of his body." *Id*. Therefore, "the allegation of neglect of duty, securing/treatment of people being

detained or transported, and conduct unbecoming a police officer/employee" was sustained as to both officers. *Id.*

According to defendant "[t]his prior incident bears directly on Officer Rodriguez-Ramos's credibility, bias, and willingness to lie when under pressure or to protect himself from internal investigations." ECF 43 at 10. The government asserts: "There is no commonality whatsoever between the defendant's arrest and transport of [the suspect]." ECF 53-2 at 17.

As noted, Rule 608(b) permits inquiry into past conduct of a witness if the conduct is "probative of truthfulness or untruthfulness." F.R.E. 608(b). In the Court's view, the Investigative Report for PIB Number 2020-0098 made an explicit finding that Rodriguez made a misrepresentation. *See* ECF 43-3 at 5. And, as the person who removed the bag from defendant's person and searched it, his credibility is relevant.

Accordingly, the defendant will be allowed to cross-examine Officer Rodriguez as to this incident. *See United States v. Johnson*, 968 F.2d 765, 767 (8th Cir. 1992) ("There may indeed be situations in which evidence from such internal investigations will bear heavily on the credibility of a testifying police officer. In such situations, a district court should deem itself free to allow such inquiries during cross-examination.").

However, the Advisory Committee Note to the 2003 amendments to Rule 608 states that "the extrinsic evidence prohibition of Rule 608(b) bars any reference to the consequences that a witness might have suffered as a result of an alleged bad act." Advisory Committee Note on 2003 amendments to F.R.E. 608.   For example, Rule 608(b) prohibits counsel from mentioning that a witness was suspended or disciplined for the conduct that is the subject of impeachment. *See United States v. Davis*, 183 F.3d 231, 257 n. 12 (3d Cir. 1999). Therefore, any reference at the

hearing to the consequences that Officer Rodriguez might have suffered as a result of the incident will be prohibited.

### C. February 11, 2020, Failure to Call a Medic (PIB Number 2021-0493)

According to the "Investigative Report for PIB Number 2021-0493" (ECF 43-4), "Sergeant Kenneth Ramberg and Officer Alex Rodriguez-Ramos failed to call for a medic for [a suspect] during his arrest involving a use of force." *Id*. at 1.  The report notes that "Officer Alex Rodriguez-Ramos stated he did not request a medic because he was under the impression that Sergeant Ramberg would request one or have someone else request one." *Id*. at 6.

In sustaining a finding of "Neglect of Duty/Failure to Render Medical Aid", the report concluded that Officer Rodriguez's belief that someone else would order a medic did not absolve him "of his responsibility to order a medic for [the suspect] or suggest [the suspect] be transported to the nearest medical facility." *Id*.  "Therefore, the allegation of Neglect of Duty/Failure to Render Medical Aid against Officer Alex Rodridguez-Ramos . . . [was] rendered Sustained." *Id*. (emphasis and underlining omitted).

Defendant argues that Rodriguez "lied" in his police report when he failed to include that the suspect was injured. ECF 43 at 12.  However, failing to abide by departmental policies does not call an officer's truthfulness into question.  And, in the Court's view, there is nothing in the report to suggest that the oversight was intentional, so as "to cover [the officer's] tracks." *Id*.

The incident is not relevant; it has no bearing on the facts of this case.  Nor is it probative of veracity.  Accordingly, defendant will not be permitted to cross-examine Officer Rodriguez at the motions hearing about this incident.

### D. April 9, 2020, Improper Vehicle Search (PIB Number 2021-0075)

On April 9, 2020, Rodriguez and Officer Drake Winkey conducted an unlawful search during an investigative stop for an alleged seatbelt violation.  ECF 43-5 ("Investigative Report for PIB Number 2021-0075").  The suspect submitted a complaint to the PIB.  Thereafter, on May 7, 2021, Rodriguez was interviewed by detectives.  *Id*. at 4.

The "Investigative Finding" section of the Report stated, *id*. at 8:

> In Officer Rodriguez's statement, he advised Officer Winkey observed weed (Marijuana) in plain view inside the vehicle, so a search was conducted for additional illegal narcotics.  Contradictorily, in both written reports authored by Officers Winkey and Rodriguez, they did not mention they observed or smelled an odor of marijuana emanating from the vehicle, nor mentioned verbally in any of their body worn camera footage.

The "Investigative Finding" section of the report concluded: "Based on the improper search of [the suspect's] vehicle, the allegation of Improper Search against Officer Alex Rodriguez is hereby rendered as Sustained."  *Id*. at 9 (emphasis and underlining omitted).[6]  Additionally, the section noted that body-worn camera footage "showed that Alex Rodriguez snatched documents out of the [suspect's] hand."  *Id*.  "Therefore, the allegation of Conduct Unbecoming an Officer/Employee against Officer Alex Rodriguez [was] hereby rendered Sustained."  *Id*. (emphasis and underlining omitted).

The defense argues that Rodriguez "lied—both to the PIB detectives investigating this case, and in his report documenting what occurred on April 9."  ECF 43 at 13.  However, defendant's portrayal of this matter is simply not supported by the facts.  In particular, the report makes no findings regarding Rodriguez's truthfulness.  As the government notes, "to read Officer

---

[6] The Investigative Report made the same finding as to Officer Winkey.

Rodriguez's capacity for truthfulness into the [Internal Affairs Department] report itself requires speculation." ECF 53-2 at 21.

I agree. The fact that Rodriguez did not accurately remember specifics of the incident more than a year after it occurred is not indicative of dishonesty. Rule 608(b) does not permit its use.

Furthermore, allowing use of such evidence on cross-examination is tantamount to use of prior bad acts, which are inadmissible to show that Officer Rodriguez acted a similar way in the case at bar. *See* F.R.E. 404(b)(1) ("Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."); *see also Sparks v. Gilley Trucking Co.*, 992 F.2d 50, 51 (4th Cir. 1993) (concluding that prior evidence of speeding was inadmissible to show that the driver was speeding at the time of the incident at issue); *Johnson v. Cap. One Servs., LLC*, BB-18-62058, 2019 WL 5190788, at *2 (S.D. Fla. Oct. 15, 2019) ("[E]vidence pertaining to other litigation and settlements is irrelevant, and the lack of probative value of any such evidence is substantially outweighed by the danger of unfair prejudice.").

Cross-examination on this matter would not be probative as to the witness's veracity. Moreover, questions about the occurrence would unnecessarily prolong the hearing. Accordingly, I conclude that defendant may not cross-examine Officer Rodriguez regarding this incident.

### E. August 8, 2020, Improper Vehicle Pursuit (PIB Number 2020-0953)

On August 8, 2020, Detective Rodriguez and others were involved in a car stop that progressed into a vehicle pursuit. ECF 43-6 ("Investigative Report PIB Number 2020-0953"). The "Investigative Finding" section of the report notes that when the vehicle pursuit crossed from Baltimore City into Baltimore County, "Captain Earl Jenkins ordered the detectives to break off the vehicle pursuit." *Id.* at 16. Nevertheless, "Detectives Alex Rodriguez, Jonathan Garcia and

13

Darwin Noesi, who were in a separate vehicle continued to pursue the vehicle into Baltimore [County], disobeying Captain Jenkins' order to break off the vehicle pursuit." *Id*.

Notably, the events recounted in this report constitute a factually complicated scenario, and for brevity, are not restated in this Memorandum Opinion. However, the report concluded, *id*. (emphasis and underlying omitted):

> Based on the facts of this case, there is sufficient evidence to prove that Detectives Alex Rodriguez, Jonathan Garcia and Drain Noesi failed to follow Policy 1503, Emergency Vehicle Operation and Pursuit Policy, dated November 24, 2019 and Policy 824, Body Worn Camera dated June 23, 3030. Therefore, the allegations of Conduct Unbecoming a Police Officer/Employee, Neglect of Duty, Insubordination Vehicle Pursuit Violation and Neglect/BWC against Detectives Alex Rodriguez, Jonathan Garcia and Darwin Noesi are hereby rendered Sustained.

This incident relates to violations of various BPD policies. But, to allow the defendant to question Rodriguez about the incident would take the Court on an unnecessary detour, unrelated to the veracity of the witness. Because none of the findings sustained against Detective Rodriguez pertain to his credibility, questioning regarding this incident is not proper under Rule 608(b). Accordingly, the defendant may not inquire into this incident during cross-examination.

### F. October 7, 2020, Failure to Write a Report (PIB Number 2021-1506)

In defendant's last submitted PIB report, it is alleged that on October 7, 2020, Detective Rodriguez conducted an improper vehicle search and failed to document the search in a report. ECF 43-7 ("Investigative Report PIB Number 2021-1506") at 1. According to the "Investigative Finding" section in the report, it was determined that the two vehicles searched during the incident "were legally searched; however, there was no incident report documented for the search of the second vehicle." *Id*. at 5. The report concluded: "Although, the detectives were legally justified in their search, the policy of this agency is to write an incident report for all searches regardless if anything is recovered, and Detective Rodriguez, who was appointed as the primary officer for this

incident, failed to write an incident report for the search of the second vehicle." *Id*. Therefore, "a finding of Sustained [was] rendered for the allegation of Neglect/ Failure to Write Report against Detective Alex Rodriguez-Ramos." *Id*. (emphasis omitted).

Quite simply, cross-examination about this incident is not warranted under Rule 608(b). There is no evidence of dishonesty that can be inferred from the occurrence. Put another way, Detective Rodriguez's failure to write a report does not implicate his veracity.

### IV. Conclusion

In sum, out of the six PIB investigative reports submitted with the Motion by defendant, only one makes a sustained finding that Officer Rodriguez made a statement "probative of truthfulness or untruthfulness." F.R.E. 608(b). Accordingly, for the foregoing reasons, I shall grant the Motion in part and deny it in part. ECF 43.

In particular, defendant will be allowed to question Rodriguez in regard to Investigative Report PIB Number 2020-0098. ECF 43-3. However, any reference to the consequences that Officer Rodriguez suffered as a result of the incident will be prohibited. Questioning related to the other PIB investigative reports submitted with the Motion (ECF 43-1; ECF 43-4 to ECF 43-7) will be barred.

An Order follows, consistent with this Memorandum Opinion.

Date: June _26, 2023                           _____/s/_____

                                               Ellen L. Hollander
                                               United States District Judge